## THE DELMIRA.

### (District Court, S. D. Florida.   July 24, 1922.)

**Salvage &#8258;31—Award for services to burning vessel.**

    A salvage award of $18,000, made to a tug well equipped with towing and fire-fighting apparatus, which in response to a wireless call went to the assistance of a laden oil tank steamer on fire in the Gulf of Mexico, arriving after the steamer had been abandoned by her crew, and which, with the assistance of a government cutter, extinguished the fire and brought her into port, where, with cargo, she was sold for $31,000.

In Admiralty.   Suit by the Sinclair Navigation Company against the British Steamship Delmira and Cargo, the Kyle Transportation Company, Limited, claimant, in which the Marine Iron Works and others intervened.   Decree entered.

William H. Malone, of Key West, Fla., for libelant.

W. Hunt Harris, of Key West, Fla., for intervener Erie R. Co.

Arthur Gomez, of Key West, Fla., for interveners Healy & Curran.

G. Bowne Patterson, of Key West, Fla., for respondents.

H. H. Taylor, of Key West, Fla. and Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for claimant.

CALL, District Judge.   February 12, 1920, the British steamship Delmira, an oil tanker, cleared from the port of Palo Blanco, Mexico, for New York, with a cargo of crude oil.   The next day the chief engineer reported a leak of oil in the stoke hold, which later, on examination, seemed to be coming from one of the cargo tanks.   Rough weather was encountered, and the steamship caught fire on the 16th, at about 8:20 p. m.   Distress signals were sent out, and after the crew had attempted unsuccessfully to extinguish the fire the master and crew proceeded in lifeboats to the steamship O'Neill, which had answered its signal of distress.   The O'Neill remained in proximity to the burning ship until about 1 o'clock of the morning of the 17th, when she proceeded on her voyage to Philadelphia.   The signal of distress was also received at Key West by the steam tug Victory, of New York, and the coast guard cutter Tallapoosa.   The Victory was a powerful tug, equipped with steam pumps and fire hose capable of throwing two streams of water from 2½-inch nozzles at distances of 175 to 100 feet, respectively.   She was also equipped with towing machine and steel cable, 300 fathoms in length, besides manilla hawsers.   The Tallapoosa was also equipped with a pump and hose capable of rendering material assistance to ships on fire.

The Victory arrived alongside the Delmira at about 3:10 a. m. on the morning of the 17th, and the Tallapoosa about half an hour later.   The Victory immediately began to play water upon the Delmira and continued to do so for the next six hours; but the Tallapoosa, because of the fact that her lifeboats swung over her sides, was unable on account of the rough sea to get close enough to render much assistance, except during the last two hours.   By 8:40 a. m. of the 17th the fire was sufficiently under control to enable a hawser to be passed from the Victory to the

---

Delmira. Thereupon the Tallapoosa gave her hawser to the Victory, and together the two proceeded to tow the Delmira to the outer harbor of Key West, a distance of approximately 40 miles, where they arrived about 3 o'clock in the afternoon. By this time fire had again broken out, but, due to the joint efforts of the Victory and the Tallapoosa, was again under control about 7 o'clock that night. At short intervals thereafter for two days more fire would break out, but was put under control by the Victory by the use of water and chemicals. Water was pumped into the Delmira until February 23d. Thereafter the Victory pumped it out and stood by for several days.

During the night of the 16th, information was conveyed by wireless to the O'Neill that assistance was being rendered to the Delmira. Arrangements were made whereby the master and crew were put ashore at Miami and returned to Key West. The Delmira and cargo were sold for $31,000, and the proceeds are now in the registry of the court for distribution.

The original libel was filed by the Sinclair Navigation Company for failure to deliver cargo under charter party in 1920. The allegations of this libel were denied, and no proof was offered to sustain them. The owner and crew libeled for salvage services.

The Marine Iron Works, a corporation, with its principal place of business at New Orleans, intervened and libeled for repairs made upon the Delmira during August, 1920. The evidence fully sustained this claim for $2,864.28.

The Erie Railroad Company intervened and libeled for damages to one of its ferryboats in a collision November, 1920. Stipulation between this intervening libelant and claimant has been filed, by which it is agreed that a decree may be entered in favor of the former for $444.97 in settlement of damages in the collision.

The Warner Quinlan Company, a corporation with its principal place of business at New York, intervened and libeled, alleging that it was the owner of the cargo, and that 5,000 barrels of oil leaked out of the tanks and became lost, and that this loss of cargo was due to the unseaworthy condition of the Delmira. The allegations of this intervening libelant were denied by the claimant, and no proof was offered to show that the Delmira was unseaworthy.

Every element of a meritorious salvage service is present in this case. The sea was rough, and, because of the nature of the cargo, there was constant danger of the loss of life and property. The work was characterized by industry, efficiency, and good, even daring, seamanship. The only thing suggested to mar the salvage service is that some of the clothing of the crew was taken away by the salvors. Of course, salvors must exercise the utmost of good faith, and they must care for property, and not loot it, upon pain of losing all right to a salvage award. But I think the evidence fails to sustain the implied charge. In the first place, the crew of the Delmira were aware for several hours of the probability that the Delmira would have to be abandoned, and had ample opportunity to gather up their effects. And, in the next place, the only things shown to have been taken off were some lanterns and phonograph records, which it appears some members of the crew of

the Tallapoosa took, but were made to return almost immediately by the commanding officer.

The Tallapoosa rendered valuable assistance. It is probably true that, acting alone, it would have been unable to put out the fire, or save the Delmira, or any part of the cargo. But the co-operation of the Tallapoosa enabled the Victory to get the fire under control and to tow the ship into smooth waters and into port, where chemicals were available; and, while no award is claimed on behalf of the Tallapoosa yet the assistance it rendered must be taken into consideration in fixing the amount of the award.

Under all the circumstances, I am of opinion that an award of $18,-000 should be made to the Victory, two-thirds of which should be awarded to the owner, and the remaining one-third to the master and crew in proportion to their monthly wages. Of the balance remaining there should next be paid to the Marine Iron Works the sum of $2,864.-28, and then to the Erie Railroad Company the sum of $444.97. The balance, if any, should be paid to the claimant or its proctors.

A decree will be entered accordingly.